IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJU PLATHOTTAM, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>JUNIPER NETWORKS, INC., a corporation,<br><br>    Defendant._____/ | No. C 04-02993 JSW<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by Defendant Juniper Networks, Inc. ("Juniper"). Having carefully considered the parties' arguments, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff was employed by Defendant Juniper from March 4, 2002 to November 20, 2003 in its Sunnyvale location as a hardware engineer and a member of the technical staff. In this position, Plaintiff's duties included bug fixing, working on release line items, assisting hardware employees, and designing and developing software for the interfaces for Juniper MITC orders. (*See* Declaration of Marina C. Tsatalis ("Tsatalis Decl."), Ex. A at 120.) Plaintiff submitted his resume for the position at Juniper to his college friend, Manoj Leelanivas, a software manager at Juniper who had encouraged Plaintiff to apply for the position. (*See id.*, Ex. A at 105, Ex. C at 14-29.)

1    During his first six months at Juniper, Plaintiff reported to one set of supervisors. Around August-September of 2002, Plaintiff began to report instead to manager Dana Treadwell, who continued to be his supervisor until October 2003, at which point Plaintiff reported to manager Veena Avula. (*See id.*, Ex. A at 121-22.)

Throughout the period of Treadwell's supervision, she noticed a number of deficiencies in Plaintiff's performance and unacceptable conduct with regard to his treatment of co-workers. In particular, during his performance evaluation of March 19, 2003, Treadwell discussed with Plaintiff certain performance issues, including his need to spend more of an effort diagnosing problems, his need to come across as respectful of other people's idea, his need to work on follow-through in the area of problem resolution, his need to be more flexible and willing to jump in to meet the demands of all project phases, and his need to be thorough and diligent in non-coding deliverables. (*See* Joint Statement of Undisputed Material Facts ("JSUMF"), ¶ 3.) Also, during the March 2003 performance evaluation, Treadwell admonished Plaintiff about his performance, in particular about the fact that Plaintiff had failed to document physical interface cards and to complete non-coding projects. (*See* Tsatalis Decl., Ex. A at 148, 149.) Lastly, Plaintiff testified that he was also criticized for losing his temper with a fellow employee, Steve Ahlgrim, as well as his condescending and harsh treatment of fellow employee, Amy Chen, to whom Plaintiff later apologized for his inappropriate conduct. (*See id.*, Ex. A at 238, 147.)

After the written performance evaluation, Treadwell continued to discuss ongoing performance issues with Plaintiff, including his failure to take ownership of projects and to perform the required tasks to diagnose problem reports as well as the resulting damage done to Plaintiff's relationships with co-workers. (*See id.*, Ex. A at 182.) On August 19, 2003, Treadwell again criticized Plaintiff's unilateral decision to transfer a bug fixing task assigned to him to another employee. (JSUMF, ¶ 4.) In response to Treadwell's admonition to perform the task himself as originally assigned, Plaintiff sent an e-mail to Treadwell and four other managers who were not his supervisors in which Plaintiff failed to take responsibility for the project and instead criticized Treadwell for her misunderstanding of the operation of various groups within the company. (*See* Tsatalis Decl., Ex. A, Ex. 7.)

2

1    Based on the persistent performance issues, Treadwell and her supervisor, Grant
2 Dorman, decided that Plaintiff should be terminated. (*See id.*, Ex. C at 66.) Treadwell and
3 Dorman approached Plaintiff's friend Leelanivas, who was at that time, Dorman's supervisor.
4 Leelanivas recommended that supervisors Dorman and Treadwell place Plaintiff on a
5 performance improvement plan ("PIP") instead of terminating him in order to afford Plaintiff an
6 opportunity to take corrective action prior to termination. (*See id.*, Ex. C at 68-69.)
7    On September 16, 2003, Treadwell discussed the perimeters of the PIP with Plaintiff and
8 detailed a number of performance issues, including his failure to follow through on fixing
9 software bugs, failure to follow directions, failure to show up to scheduled meetings, failure to
10 complete problem report analyses, and failure to take responsibility for assigned problem
11 reports. (*See* JSUMF, ¶ 5.) Treadwell explained that Plaintiff would have until October 30,
12 2003 to demonstrate significant improvement and emphasized that failure to resolve the
13 performance deficiencies addressed in the plan would result in further disciplinary action, up to
14 and including termination. (*Id*.)
15    Although Plaintiff never reported to his friend at the company, Manoj Leelanivas, he
16 confided in him regarding the PIP and requested reassurance that his job was not in jeopardy.
17 (*See* Tsatalis Decl., Ex. A at 74, 161, 198-99, 138, 209, 212; Ex. C at 78-79.) Leelanivas
18 encouraged Plaintiff to perform under the plan and to put in 110 percent of his ability in order to
19 succeed under the plan. (*See id*., Ex. C at 79.) Leelanivas testified that he encouraged Plaintiff
20 to address the performance issues and to follow the plan, and that failure to do so could result in
21 termination. (*See id*., Ex. C at 78.) According to Plaintiff, Leelanivas also informed him that
22 the company was subjecting Plaintiff to discipline in order to assuage the perception that only
23 Caucasian employees were being disciplined. (Declaration of Waureen McCoy ("McCoy
24 Decl.") at Ex. A at 58, 64, 91, 93, 201-03.)
25    Soon after Treadwell placed Plaintiff on the PIP, the software development group was
26 reorganized, thereby eliminating Treadwell's position in the company. (*See* Tsatalis Decl., Ex.
27 B at 32, 36.) Just after her termination, Treadwell had several conversations with the Human
28 Resources Department about whether age or gender discrimination or possibly reverse race

3

1  discrimination played a part in the decision to terminate her.  (McCoy Decl., Ex. B at 49-50; Ex.
2  C at 39-40.)   However, after a brief, informal investigation by the company, Treadwell decided
3  to accept severance and determined not to pursue a lawsuit or any administrative charge against
4  Juniper.  (*See* McCoy Decl, Ex. C at 50; JSUMF, ¶ 6; Tsatalis Decl., Ex. B at 56.)  Plaintiff
5  contends that at his friend's bachelor party, Leelanivas, who had allegedly made negative
6  remarks about Caucasians, indicated that Treadwell was suing Juniper and asked that Plaintiff
7  not disclose either the negative remarks he had made in the past or the fact that there would be
8  an investigation of Treadwell's complaints.  (*See* McCoy Decl., Ex. A at 60, 203; Declaration of
9  Biju Plathottam ("Plathottam Decl."), ¶¶ 3, 9, 10.)

10  In early October 2003, Veena Avula began to supervise Plaintiff.  (*See* Declaration of
11  Veena Avula ("Avula Decl."), ¶ 3; Tsatalis Decl., Ex. A at 122.)  In a meeting on October 10,
12  2003, Avula and her supervisor, Robert Krohn, met with Plaintiff to discuss the PIP and her
13  expectations and the consequences should he fail to perform to meet specific objectives outlined
14  in the plan.  (Avula Decl., ¶ 3.)  At the meeting, both supervisors made it clear to Plaintiff that
15  his job was "on the line" and that in order to continue his employment at Juniper, Plaintiff
16  needed to improve his performance.  (*Id*., ¶ 4.)  Avula found that Plaintiff continued to
17  demonstrate the same performance deficiencies addressed in his PIP, including producing
18  inadequate status reports, missing engineering meetings, passing along his assigned tasks to
19  fellow team members.  (*Id*., ¶¶ 5, 6.)  After observing Plaintiff's continued failure to meet the
20  goals set out in the PIP, supervisor Avula alone decided to terminate his employment.  (*Id.*, ¶¶
21  8, 9.)  Avula made the termination decision without any input or influence of Plaintiff's friend,
22  Leelanivas.  (*Id.*, ¶ 9.)

23  Plaintiff does not dispute the evidence introduced documenting his repeated
24  performance issues and resultant disciplinary procedures.  He contends, however, that he had
25  formerly received better reviews and was placed in disciplinary proceedings and ultimately
26  terminated in order to assuage the alleged perception by Caucasian employees at Juniper that
27  only Caucasian employees were subjected to discipline.
28

4

Plaintiff brings suit against Juniper alleging race discrimination and failure to maintain an environment free from discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, *et. seq.*; race discrimination and retaliation under 42 U.S.C. § 1981; race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; wrongful termination in violation of public policy; and breach of the covenant of good faith and fair dealing.

The Court will address the additional specific facts as required in the analysis.

**ANALYSIS**

**A.   Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.

5

1  2000). Once the moving party meets his or her initial burden, the non-moving party must go
2  beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a
3  genuine issue for trial." Fed. R. Civ. P. 56(e).
4  In order to make this showing, the non-moving party must "identify with reasonable
5  particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
6  1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
7  must take care adequately to point a court to the evidence precluding summary judgment
8  because a court is "'not required to comb the record to find some reason to deny a motion for
9  summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th
10  Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418
11  (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary
12  judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  Claims for Race Discrimination Do Not Survive Summary Judgment.**

Plaintiff brings a claim for race discrimination and contends that Juniper terminated him based on his membership in a protected class. Plaintiff alleges that, as an Indian employee, he was placed on the performance improvement plan and finally terminated in order to make Caucasian employees feel that they were not the subject of invidious discrimination. In order to make a claim for discrimination, Plaintiff must establish that he suffered an adverse employment action that was motivated by intentional discriminatory animus. *See, e.g., Guz v. Bechtel National, Inc*., 24 Cal.4th 317, 353-58 (2000). The proper legal framework for determining whether Plaintiff's claim should survive summary judgment is the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

First, Plaintiff must establish a prima facie case of discrimination. *See id.*; *Guz,* 24 Cal.4th at 351-54. Whether Plaintiff can meet his burden to establish a prima facie case of discrimination is a matter of law to be determined by the court. *Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Then, in order to prevail, Plaintiff must demonstrate that the employer's

1 alleged reason for the adverse employment decision was a pretext for another, discriminatory
2 motive. *See Guz*, 24 Cal.4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d
3 1054, 1061 (9th Cir. 2002). Plaintiff may establish a prima facie case of discrimination by
4 demonstrating that (1) he belongs to a statutorily protected class; (2) he applied for and was
5 qualified for an available position; (3) he suffered an adverse employment decision; and (4)
6 similarly situated individuals not in the protected class were treated more favorably. *St. Mary's*
7 *Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). The only significant difference in the FEHA
8 analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the first
9 three elements, demonstrate some other circumstances that suggests discriminatory motive.
10 *See, e.g., Guz*, 24 Cal.4th at 355.

11 If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to
12 Juniper to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's
13 employment. *See McDonnell Douglas*, 411 U.S. at 802. If Juniper does so, Plaintiff must
14 demonstrate that Juniper's articulated reason is a pretext for unlawful discrimination by "'either
15 directly persuading the court that a discriminatory reason more likely motivated the employer or
16 indirectly by showing that the employer's proffered explanation is unworthy of credence.'"
17 *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of*
18 *Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff's evidence must be both specific
19 and substantial to overcome the legitimate reasons set forth by the employer. *Aragon v.*
20 *Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

21     **1.    Prima Facie Case.**

22 At summary judgment, the degree of proof necessary to establish a prima facie case is
23 "minimal and does not even need to rise to the level of a preponderance of the evidence."
24 *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26
25 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an
26 easy one to satisfy, Plaintiff has failed to do so. Although Plaintiff's race make him a member
27 of a protected class and his termination qualifies as an adverse employment action, he fails to
28 satisfy the other two prongs of the test; that is, to demonstrate that he was qualified for the

position and that other, similarly situated individuals not in the protected class were treated more favorably. It is undisputed that Plaintiff's performance repeatedly fell short of Juniper's standards, that he had been disciplined under the PIP, and that he had failed to address the deficiencies in the PIP which merited termination under the company's policies. Therefore, Plaintiff has failed to demonstrate that he was qualified for the position.[1]

In addition, Plaintiff has not shown that other employees outside of his protected class were treated more favorably for the same or similar conduct. Although given an opportunity in his briefing and again at oral argument, Plaintiff was unable to specify any portion of the record to support his contention that other employees not in his protected class were treated more favorably.

Because Plaintiff has not met his burden to demonstrate the existence of a prima facie case of race discrimination because he is unable to demonstrate that he was qualified for the position or that other employees outside of his protected class were treated more favorably for the same or similar conduct, summary judgment on his claims is properly granted. However, even assuming *arguendo* that Plaintiff had established a prima facie case, summary judgment is still warranted because Juniper has asserted a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to demonstrate the reason is merely pretext.

---

[1] Plaintiff's contention that he was told that other people in the company thought he was performing adequately is inadmissible hearsay and unsupported by the record. (*See* McCoy Decl., Ex. A at 205 (Plaintiff's testimony about what Leelanivas told him that another supervisor, Robert Krohn, allegedly said to Leelanivas); Ex. A at 205-06 (Plaintiff's testimony about what Avula told him Scott Dredge was saying to Avula).) This double hearsay testimony is inadmissible. *See* Fed. R. Evid. 802. In addition, as the testimony is not specific as to time, it is not relevant because it fails to contradict the voluminous evidence indicating that, after the passage of the initial few weeks after he was placed on the PIP, Plaintiff failed to maintain a satisfactory performance in order to meet the expectations of his employer. Lastly, Plaintiff's reliance in his declaration on an e-mail purportedly sent from Grant Dorman on July 11, 2003 is misplaced as no such e-mail was provided in the record and the Court has sustained Defendant's objection based on lack of best evidence and lack of authentication. Fed. R. Evid. 1002; 901. Although many of Defendant's other objections are well-founded, even considering all the purported evidence submitted by Plaintiff, the outcome would remain the same.

8

### 2. Juniper Has Demonstrated Legitimate Business Reasons for Terminating Plaintiff's Employment.

Even if Plaintiff could successfully establish a prima facie case of race discrimination, the undisputed facts demonstrate that Juniper had legitimate business reasons to terminate Plaintiff's employment. Failure to perform in accordance with the standards set by the employer is sufficient to constitute a legitimate business reason for termination. *See Hersant v. Dept. of Social Services*, 57 Cal. App. 4th 997, 1007-1010 (1997). The record is replete with complaints regarding Plaintiff's performance. Defendant has met its burden of demonstrating legitimate business reasons for terminating Plaintiff's employment.

### 3. Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.

Because Defendant presents evidence demonstrating a legitimate nondiscriminatory reason for the termination, Plaintiff bears the burden of demonstrating that Defendant's articulated reason is pretextual. Plaintiff may do so "either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

The Court has already determined that the undisputed evidence demonstrates that Plaintiff failed to perform his duties in compliance with Juniper's expectations. Plaintiff fails to refute Juniper's legitimate non-discriminatory reasons for termination. Plaintiff's theory of the case is that he was made a scapegoat and ultimately terminated by Juniper in an effort to assuage the perception that the company was discriminating against the Caucasian employees. In support of this theory, Plaintiff contends that his friend Leelanivas told him that Juniper disciplined and terminated him in order to protect against the perception that the company only disciplined and terminated its Caucasian employees. (*See* McCoy Decl., Ex. A at 58, 64, 91, 93, 200-03; Plathottam Decl., ¶ 8.) Although inadmissible hearsay and unsupported by any specific employees' own declarations or testimony, Plaintiff also proffers his own testimony that other employees were under the impression that the company discriminated against its Caucasian members. (*See* McCoy Decl., Ex. A at 58, 87, 93.)

1  However, even if the evidence regarding the other employees' perception or if the
2  alleged remarks made by Leelanivas were admissible, there is no evidence that these unnamed
3  employees or Leelanivas were involved in any way with the decision to termination Plaintiff's
4  employment. Plaintiff's supervisor, Avula, the person solely responsible for the decision to
5  terminate Plaintiff, proffered a declaration stating unequivocally that it was her decision alone
6  and that she was not influenced in any way by Leelanivas. (Avula Decl., ¶ 9.) In addition,
7  Plaintiff testified that Leelanivas was never his supervisor. (*See* Tsatalis Decl., Ex. at 74, 161-
8  62.) "[S]tatements by nondecisionmakers, nor statements by decisionmakers unrelated to the
9  decisional process itself, [cannot alone] suffice to satisfy the plaintiff's burden in this regard."
10  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004), *citing Price Waterhouse
11  v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).

12  Plaintiff fails to set forth any direct evidence to persuade the Court that a discriminatory
13  reason more likely motivated the employer or any indirect evidence tending to demonstrate that
14  the employer's proffered explanation is unworthy of credence. *See Merrick,* 892 F.2d at 1437.
15  Further, Plaintiff has failed to set forth any indirect evidence that Juniper's proffered
16  explanation is unworthy of credence. *See Merrick,* 892 F.2d at 1437. Plaintiff himself testified
17  that no one at Juniper ever made a disparaging remark about his race. (JSUMF, ¶ 10.) In
18  addition, during his employment at Juniper, Plaintiff never complained about being the subject
19  of any type of discrimination based on his race. (Tsatalis Decl., Ex. A at 171-72; Avula Decl., ¶
20  10.)

21  Having failed to raise a disputed fact demonstrating that Juniper's articulated reason for
22  termination is pretextual, either directly or indirectly, the Court grants summary judgment on
23  Plaintiff's allegations of discrimination based on race.

24  **C.     Retaliation Claims Do Not Survive Summary Judgment.**

25  Similar to elements of establishing discrimination, the elements of a Title VII or FEHA
26  retaliation claim "require that (1) the plaintiff establish a prima facie case of retaliation, (2) the
27  defendant articulate a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff
28  show that the defendant's proffered explanation is merely a pretext for the illegal termination."

1  *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). In order to establish a
2  prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected
3  activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal
4  link between the protected activity and the employer's action. *Id.*

5  Plaintiff alleges that the reason for his termination was actually based on his decision to
6  refuse to lie when asked by his friend Leelanivas to cover up allegedly racist remarks he made
7  about Caucasians during an the investigation of supervisor Treadwell's potential race
8  discrimination complaints against Juniper. However, the undisputed facts indicate that there
9  never was a complaint or lawsuit against the company filed by Treadwell and further, there is
10 no indication that Plaintiff was asked to become involved in any investigation of a potential
11 complaint. (*See* JSUMF, ¶ 6; Tsatalis Decl., Ex. A at 77, 78.) Without any protected activity,
12 Plaintiff's claim for retaliation fails.

13 However, even if the Court considers his refusal to lie, absent an actual opportunity to
14 do so, there is no evidence supporting the necessary prima facie element of a causal relationship
15 between the alleged protected activity and the employer's adverse action. The disciplinary
16 measures of placing Plaintiff on the PIP occurred prior to Plaintiff's conversation with his
17 friend Leelanivas in which his friend allegedly requested that he lie during an investigation.
18 (*Compare* Tsatalis Decl., Ex. A at 217 (conversation with Leelanivas occurred on October 30,
19 2003) and Ex. A at Deposition Ex. 8 (Plaintiff's PIP dated September 10, 2003).) Second, the
20 undisputed evidence indicates that Avula, Plaintiff's supervisor at the time of his termination,
21 was the sole person who made the decision to terminate him and Avula was not aware of
22 Plaintiff's alleged participation in or refusal to participate in any investigation of complaints
23 made by Treadwell. (*See* JSUMF ¶ 13, Avula ¶¶ 12-14.) Because Avula had no knowledge of
24 Plaintiff's alleged protected activity, Plaintiff cannot demonstrate that she was motivated by
25 retaliatory animus in her decision to terminate his employment.[2]

---

[2] Based on these facts, the California Supreme Court case of *Yanovitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005), cited by Plaintiff for the first time during oral argument is inapposite. The motion to strike the Defendant's letter brief filed in response is DENIED.

11

1    Therefore, Plaintiff fails to make out a prima facie case of retaliation on either the
2 protected activity or the causal nexus elements of the claims. *See Flait*, 3 Cal. App. 4th at 476.
3 Further, even if Plaintiff were able to establish a prima facie case of retaliation under these
4 facts, Juniper has articulated a non-retaliatory reason for its conduct, and Plaintiff has failed to
5 produce evidence that Juniper's proffered reason for the disciplinary measures and ultimate
6 termination were a pretext for retaliation. Therefore, the Court grants summary judgment on
7 Plaintiff's allegations of discrimination based retaliation.

**D.    Fourth, Fifth and Seventh Claims for Relief Do Not Survive Summary Judgment.**

9    Plaintiff's fourth claim for relief for wrongful termination in violation of public policy
10 fails because Plaintiff cannot maintain a claim for discrimination or retaliation and fails to
11 demonstrate a causal nexus between his termination and any protected activity. *See Turner v.*
12 *Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994). In addition, because Plaintiff's race
13 discrimination and retaliation claims do not survive summary judgment, Plaintiff cannot
14 maintain his fifth claim for relief for failure to maintain a work environment free from
15 discrimination in violation of FEHA. *See Trujillo v. North Co. Transit Dist.*, 63 Cal. App. 4th
16 280, 289 (1998). Lastly, whether Plaintiff's offer letter constitutes an underlying contract, his
17 claim for breach of the covenant of good faith and fair dealing is premised upon Juniper's
18 decision to terminate him wrongfully. (Complaint, ¶ 58.) The breach of the covenant claim
19 fails because the race discrimination and retaliation claims have failed and there is no evidence
20 in the record supporting Plaintiff's contentions that his termination was wrongful. Therefore,
21 Plaintiff's fourth, fifth and seventh claims for relief do not survive summary judgment.

22 ////
23 ////
24 ////
25 ////
26 ////
27 ////
28 ////

12

**CONCLUSION**

For the foregoing reasons, Defendant Juniper's motion for summary judgment is GRANTED on all causes of action. Judgment shall be entered in favor of Defendant and against Plaintiff.[3]

**IT IS SO ORDERED.**

Dated: February 13, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[3] Having failed to receive any opposition from Plaintiff with respect to his counsel's motion to withdraw, and having received a statement of non-opposition from Defendant, the Court GRANTS Plaintiff's counsel motion to withdraw as unopposed. The hearing date of February 24, 2006 is hereby VACATED.